UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DEWAYNE GRIFFIN,

                              Plaintiff,

                -against-

THE CITY OF NEW YORK, DET. MICHAEL
SIMMONDS, in his individual and official
capacities, SGT. NICHOLAS LOWETH, P.O., in
his individual and official capacities, JAVIER
COLON, in his individual and official capacities
P.O. CESIA HERRERA, in her individual and
official capacities, P.O. NAVDEEP KAMBOJ, in
his individual and official capacities, P.O. RYAN
LAMBERT, in his individual and official
capacities, P.O. MICHAEL ROSSIDES, in his
individual and official capacities,  AND OTHER
AS-YET-UNKNOWN POLICE OFFICERS &
SUPERVISORS JOHN AND JANE DOES # 1–
10, in their individual and official capacities,

                              Defendants.

23-cv-9072

**COMPLAINT AND**
**JURY DEMAND**

Plaintiff DEWAYNE GRIFFIN, by and through his attorneys, ZMO Law

PLLC, complaining of the Defendants, respectfully alleges as follows based on

information and belief:

# PRELIMINARY STATEMENT

1.      Plaintiff Dewayne Griffin brings this action against a New York City Police Department ("NYPD") detective who assaulted him and other officers who falsely accused Mr. Griffin of robbery to justify the detective's assault. This is an action for compensatory damages, punitive damages, and attorney's fees, for the violation of rights secured by the United States Constitution and common law, pursuant to 42 U.S.C. § 1983 and 1988.

2.      At around midnight going into February 21, 2023, Mr. Griffin was standing near the corner of Fulton Street and Washington Avenue in Brooklyn, taking a break from his Uber Eats deliveries. He saw a red Ford Mustang speed down Fulton Street and strike a dog, trapping the animal under the car and dragging it down the block. Mr. Griffin, the dog's owner and several other bystanders approached the car to rescue the injured animal.

3.      The vehicle's driver was off-duty NYPD Detective Michael Simmonds. Without identifying himself as an officer, Det. Simmonds exited the car and began arguing with Mr. Griffin and the other men. Det. Simmonds smelled like alcohol, slurred his words, and had a handgun holstered to his waist. After the group used a jack to lift the vehicle and free the dog, Mr. Griffin told the other men that Det. Simmonds was drunk and that they should wait on the other side of Fulton Street for the police to arrive rather than attempt

to reason with Det. Simmonds. As captured on security camera footage from nearby businesses, Det. Simmonds followed Mr. Griffin across the street, grabbed him by the neck, and pushed him against the wall of a building. Seconds later, on-duty police officers arrived.

4.      Rather than immediately arresting Det. Simmonds for driving while intoxicated and assaulting Mr. Griffin, the officers gave Det. Simmonds a bottle of water and allowed him to keep his gun. Body-camera footage captures several officers, led by Defendant Sergeant Nicholas Loweth, brainstorming what charges they could bring against Mr. Griffin despite having no evidence he committed a crime. The officers arrested Mr. Griffin for menacing even after viewing security camera footage showing that he did nothing wrong. Det. Simmonds then provided false information to a paralegal who swore to a false criminal complaint charging Mr. Griffin with attempted robbery in the first degree. A month later, a grand jury voted not to indict, and the case against Mr. Griffin was dismissed.

**JURISDICTION**

5.      Plaintiff brings this action for compensatory and punitive damages, affirmative and equitable relief, an award of costs and attorney fees

under 42 U.S.C. § 1988, and such other and further relief as this Court deems equitable and just.

6.     This action is brought pursuant to 42 U.S.C. § 1983 *et seq.* to redress the deprivation under the color of law of Plaintiff's rights as secured by the United States Constitution.

7.     The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

8.     The Court has supplemental jurisdiction over Mr. Griffin's claims brought under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a).

9.     Mr. Griffin has complied with the requirements of New York General Municipal Law Section 50-I by making and serving a notice of claim on the Comptroller of the City of New York on April 17, 2023.

10.     Said notice was served within the time required by New York General Municipal Law Section 50-e.

11.     More than thirty days have elapsed since the service of that notice and no offer of settlement has been made.

12.     At the request of the City of New York, Mr. Griffin submitted to a hearing pursuant to New York Municipal Law Section 50-h on July 14, 2023.

## VENUE

13.      Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b) because this is the District in which the claim arose.

## JURY DEMAND

14.      Plaintiff respectfully demands a trial by jury on all issues and claims set forth in this Complaint pursuant to the Seventh Amendment of the United States Constitution and Fed. R. Civ. P. 38(b).

## PARTIES

15.      Plaintiff Dewayne Griffin, a 36-year-old African-American man, is a citizen of the United States and a resident of New York.

16.      Defendant Detective Michael Simmonds was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of his employment in carrying out law enforcement functions. He is sued in his individual and official capacities.

17.      Defendant Sergeant Nicholas Loweth was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of his employment in carrying out law enforcement functions. He is sued in his individual and official capacities.

18.     Defendant Officer Cesia Herrera was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of her employment in carrying out law enforcement functions. She is sued in her individual and official capacities.

19.     Defendant Officer Javier Colon was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of his employment in carrying out law enforcement functions. He is sued in his individual and official capacities.

20.     Defendant Officer Navdeep Kamboj was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of his employment in carrying out law enforcement functions. He is sued in his individual and official capacities.

21.     Defendant Officer Ryan Lambert was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of his employment in carrying out law enforcement functions. He is sued in his individual and official capacities.

22.     Defendant Officer Michael Rossides was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of his employment in carrying out law enforcement functions. He is sued in his individual and official capacities.

23.     Defendants Does #1 through 10, whose actual names Plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designations "John Doe" and "Jane Doe," represent those officers, supervisors, and/or other agents and employees of the City of New York, acting under color of law and within the scope of their employment in carrying out law enforcement functions, who participated in the misconduct described herein. They are sued in their individual and official capacities.

## FACTS

24.     Mr. Griffin lives in Brooklyn, New York, with his wife and son.

25.     As of February 2023, Plaintiff was employed as a delivery person for Uber Eats.

26.     On February 20, 2023, Plaintiff was making deliveries on his bike for Uber Eats.

27.     At around 11:30 p.m., Plaintiff stopped for a break at the bus stop on Fulton Street between Washington Avenue and St. James Place in Brooklyn.

28.     Plaintiff's friend, Brian Smith, was playing fetch with his dog on the sidewalk near the corner of Washington and Fulton.

29.     Plaintiff saw the dog chase after the toy into the road.

30.     At the same time, a red Ford Mustang was driving at an excessive rate of speed down Fulton from the direction of St. James Place.

31.     The car struck the dog, which became trapped underneath the car.

32.     The car dragged the dog down the block before stopping at a red light at the intersection of Fulton and Washington.

33.     Plaintiff and several other bystanders walked over to the car to alert the driver that there was a dog under his vehicle and help rescue the dog from underneath the car.

34.     Plaintiff told the driver not to back up so as to avoid crushing the dog.

35.     Unbeknownst to Plaintiff, the driver was an NYPD detective, Michael Simmonds.

36.     Plaintiff attempted to flag down cars to obtain a jack so that he could raise the car and free the trapped dog, but Simmonds was concerned that using a jack would damage his vehicle.

37.     While Plaintiff was trying to obtain a jack, Mr. Smith and Detective Simmonds argued about using a jack and about who was responsible for the dog's injuries.

38.     Mr. Smith called 911.

39.     Detective Simmonds was slurring his words.

40. Plaintiff could smell alcohol on Detective Simmonds.

41. Plaintiff saw that Detective Simmonds had a handgun holstered at his waist.

42. Detective Simmonds did not identify himself as an NYPD officer.

43. Several minutes later, the driver of another vehicle stopped and provided a jack, which the group use to free the injured dog.

44. Plaintiff advised Mr. Smith not to argue with Simmonds and to wait for the police to arrive because Simmonds was drunk.

45. Det. Simmonds became enraged when he heard Plaintiff say that Det. Simmonds was drunk.

46. Det. Simmonds put his hand on his gun.

47. Plaintiff retreated across the street to his bike, which was parked on the sidewalk outside a deli on the southeast corner of Fulton Street and Washington Avenue.

48. Detective Simmonds followed Plaintiff across the street.

49. Plaintiff got onto his bike.

50. Detective Simmonds, who is approximately 6'5 and heavyset, ran up to the bike, trapping Plaintiff against the window of the deli.

51. Detective Simmonds pulled Plaintiff off the bike.

52.     Detective Simmonds forcibly placed both his hands around Plaintiff's neck.

53.     Detectives Simmonds pushed Plaintiff against the deli window and continued to choke him.

54.     The assault was captured by security camera stationed above the door of the deli.

55.     As Det. Simmonds choked Plaintiff, a large group of NYPD officers arrived.

56.     Officers Javier Colon, Cesia Herrera, and Navdeep Kamboj, the first officers to exit their vehicles, pulled Detective Simmonds away from Plaintiff.

57.     Additional officers quickly arrived, including Officers Shahzad Hussain, Ryan Lambert, Mindaugas Maleckas, Michael McManus, Orest Petrychyn, Amador Rivera, Michael Rossides, and Sean Sheehan, and Sergeant Nicholas Loweth.

58.     Det. Simmonds informed Sgt. Loweth and the other officers that he was an NYPD detective.

59.     Det. Simmonds told Officer Colon that he hit a dog and that "they were trying to gang up on me."

60.     Det. Simmonds's speech was slurred because he was intoxicated.

61.     Officer Colon told Det. Simmonds, "I want to keep you out of trouble."

62.     Det. Simmonds continued yelling at Plaintiff and Mr. Smith from across the street.

63.     One of the officers gave Det. Simmonds a bottle of water.

64.     The officers allowed Det. Simmonds to keep his gun even though he was clearly intoxicated.

65.     Det. Simmonds was not asked to take a breathalyzer.

66.     Det. Simmonds falsely told the officers that a group of people had surrounded his car, tried to "gang up on me" and that someone "tried to swing on me."

67.     Plaintiff explained to the officers that he was only trying to help the dog and that Det. Simmonds was the only aggressor.

68.     The officers interviewed several people who witnessed the interactions between Det. Simmonds, Plaintiff, and Mr. Smith.

69.     The witnesses told the officers that nobody tried to gang up on Det. Simmonds and that it was Det. Simmonds who was being confrontational.

70.     Officer Lambert viewed security footage from a nearby store.

71.     Officer Lambert told Officer Rivera that there was "nothing on the camera" other than Mr. Smith trying to get under the car to help his dog.

72.     Meanwhile, Sergeant Loweth conferred with Det. Simmonds and several of the on-duty officers.

73.     Sgt. Loweth used his cell phone to call a Lieutenant. Sgt. Loweth falsely told the Lieutenant that a group of eight men surrounded Det. Simmonds' car and threatened him, that a "scuffle" ensued, and that it "looked like harassment, or maybe menacing."

74.     Sgt. Loweth instructed Officer Lambert not to allow Plaintiff to leave because he would be getting arrested.

75.     Officer Lambert responded, "really, for what?"

76.     Sgt. Loweth said that anybody who was "outside the car" could be arrested for harassment or menacing.

77.     Officer Lambert, following Sgt. Loweth's directives, told Officer Colon not to allow Plaintiff to leave because he was going to be arrested for harassment.

78.     Officer Lambert then asked Officer Colon, "what are we collaring these guys for?"

79.     Officer Colon repeatedly said "no," indicating that there was no basis for arresting Plaintiff or the other people who rescued the dog.

80.     Sgt. Loweth then walked over to Officers Kamboj, Herrera, and Lambert, who were already waiting outside the ambulance where Plaintiff was being treated for injuries sustained when Simmonds assaulted him.

81.     Sgt. Loweth directed the officers to arrest Plaintiff for harassment and menacing.

82.     After Sgt. Loweth walked away, Officers Kamboj, Herrera, and Lambert continued to speculate why Plaintiff was being arrested.

83.     At one point during the conversation, Officer Kamboj stated, "I don't know man, the powers that be."

84.     Plaintiff exited the ambulance and was met by Officers Lambert, Herrera, Kamboj, and Rossides.

85.     The officers arrested Plaintiff at approximately 12:30 a.m. on February 21, 2023.

86.     Officers Lambert and Rossides transported Plaintiff to NYPD's 88th Precinct.

87.     Later that day, February 21, 2023, the Kings County District Attorney's Office ("KCDA") filed a complaint charging Plaintiff with attempted robbery in the first degree, attempted robbery in the second degree, and menacing in the third degree.

88.     The complaint was sworn to by KCDA paralegal Pricilla Villalobos.

89.     The criminal complaint was based entirely on a false statement by Det. Simmonds.

90.     According to the criminal complaint, Det. Simmonds told Ms. Villalobos that Plaintiff and five other people surrounded Simmonds and said, "If you don't give us $500 for the dog we're going to put you underneath the car," and that Plaintiff "then placed both of [Plaintiff's] hands inside [Plaintiff's] jacket pockets and stated in sum and substance, I should body you right now."

91.     These allegations by Det. Simmonds were false.

92.     Plaintiff was held in custody and arraigned on February 22, 2023, in Kings County Criminal Court on attempted robbery in the first degree, attempted robbery in the second degree, and menacing in the third degree.

93.     Plaintiff was released at arraignment and placed on supervised release.

94.     On March 23, 2023, a grand jury voted not to indict Plaintiff.

95.     All charges against Plaintiff were dismissed.

## DAMAGES

96.     Plaintiff suffered physical, psychological, economic, and

emotional injuries as a result of being assaulted by Detective Simmonds and

wrongfully arrested and prosecuted for attempted robbery.

97.     Plaintiff suffered the loss of his freedom for approximately 36

hours, loss of income, personal injuries, pain and suffering, severe mental

anguish, emotional distress, humiliation, indignities and embarrassment,

degradation, damage to reputation, and loss of natural psychological

development, all of which continue to date and are likely to continue into the

future.

## COUNT I

**42 U.S.C. § 1983: Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments – All Individual Defendants.**

98.     Plaintiff hereby incorporates by reference all the foregoing

paragraphs and further alleges as follows:

99.     The Individual Defendants, individually and in concert, acted

knowingly, willfully, intentionally, and with actual malice to initiate and/or

continue criminal proceedings against Plaintiff without probable cause and to

deprive him of his liberty, in violation of his rights under the Fourth and

Fourteenth Amendments to the United States Constitution.

100.    The proceedings terminated in Plaintiff's favor.

101.    The Individual Defendants are liable for their violation of

Plaintiff's constitutional rights and for compensatory and punitive damages

pursuant to 42 U.S.C. § 1983.

## COUNT II:

### 42 U.S.C. § 1983: Excessive Force in Violation of the Fourth and Fourteenth Amendments – Det. Michael Simmonds.

102.    Plaintiff hereby incorporates by reference all the foregoing

paragraphs and further alleges as follows:

103.    Det. Simmonds, armed with a firearm, grabbed Plaintiff by the

neck, choked him, and pushed him against a wall.

104.    The aforementioned actions amounted to a "seizure" of Plaintiff's

body within the meaning of the Fourth Amendment.

105.    Det. Simmonds knew that Plaintiff had not committed a crime and

that no application of force was necessary or justified.

106.    By his actions, Det. Simmonds violated Plaintiff's clearly

established right to be free from excessive and unreasonable use of force, to not

be deprived of liberty without due process of law, and to be free from summary

punishment.

107. Det. Simmonds' actions were motivated by evil intent and/or were done in reckless or callous indifference to Plaintiff's constitutional rights. Accordingly, punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

## COUNT III:

### False arrest under New York State Law – All Defendants

108. Plaintiff hereby incorporates by reference the foregoing paragraphs and further alleges as follows:

109. On February 21, 2023, the Individual Defendants intentionally arrested and confined Plaintiff without probable cause or legal justification.

110. As a result of the aforesaid conduct by the Individual Defendants, Plaintiff was subjected to illegal, improper and false arrest by the defendants, taken into custody, and caused to be falsely imprisoned, detained, and confined, without probable cause, privilege or consent.

111. At all times relevant herein, Plaintiff was conscious of said confinement and did not consent to same.

112. At all times relevant herein, the said confinement of Plaintiff was without probable cause and was not otherwise privileged.

113. At all times relevant herein, the aforesaid actions by defendants constituted a deprivation of Plaintiff's rights.

114. As a result of the Individual Defendants' unlawful conduct, plaintiff has suffered physical pain and mental anguish, shock, fright, apprehension, embarrassment and humiliation and loss of freedom.

115. Defendant City of New York, as employer of the Defendant Officers, is responsible for the Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

116. By reason of the foregoing, Plaintiff is entitled to punitive damages against the individual defendants named herein.

## COUNT IV:

**False imprisonment under New York State law – All Defendants**

117. Plaintiff hereby incorporates by reference the preceding paragraphs and further alleges as follows:

118. As a result of the foregoing, Plaintiff was falsely imprisoned, his liberty was restricted for an extended period of time, he was put in fear for his safety and humiliated by being arrested in front of bystanders in public without probable cause and then held in police custody for approximately 36 hours.

119. At all times relevant herein, Plaintiff was conscious of said confinement and did not consent to same.

120. At all times relevant herein, said confinement of Plaintiff was without probable cause and was not otherwise privileged.

121.     At all times relevant herein, the aforesaid actions by defendants constituted a deprivation of Plaintiff's rights.

122.     As a result of defendants' conduct, Plaintiff has suffered physical pain and mental anguish, shock, fright, apprehension, embarrassment and humiliation and loss of freedom.

123.     Defendant City, as employer of the Defendant Officers, is responsible for the Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

124.     Plaintiff is entitled to punitive damages against the individual defendants.


## COUNT V

### Assault under New York State law – Det. Simmonds, Defendant City of New York

125.     Plaintiff hereby incorporates by reference the forgoing paragraphs.

126.     At all relevant times, Det. Simmonds placed Plaintiff in apprehension of imminent harmful and offensive bodily contact, by displaying a firearm, grabbing Plaintiff around the neck, choking him, and pushing him against a wall.

127.    As a result of Defendant's conduct, Plaintiff has suffered physical pain and mental anguish, shock, fright, apprehension, embarrassment and humiliation.

128.    By reason of the forgoing, Plaintiff is entitled to punitive damages against the Defendant Officers named herein.

129.    Defendant City, as employer of Det. Simmonds, is responsible for Simmonds' wrongdoing under the doctrine of *respondeat superior*.


## COUNT VI

**Battery under New York State law – Det. Simmonds and City of New York**

130.    Plaintiff hereby incorporates by reference the foregoing paragraphs and further alleges as follows:

131.    By grabbing, choking, and pushing Plaintiff, Det. Simmonds touched Plaintiff in a harmful and offensive manner.

132.    At all relevant times, Det. Simmonds touched Plaintiff in such a manner without privilege or consent from Plaintiff.

133.    As a result of the aforementioned conduct, Plaintiff has suffered severe physical pain and mental anguish, shock, fright, apprehension, embarrassment and humiliation.

134.    By reason of the forgoing, Plaintiff is entitled to punitive damages against Det. Simmonds.

135.    Defendant City, as employer of Det. Simmonds, is responsible for Det. Simmonds' wrongdoing under the doctrine of *respondeat superior*.

## COUNT VII

**Intentional Infliction of Emotional Distress – All Defendants**

136.    Plaintiff hereby incorporates by reference all preceding paragraphs and further alleges as follows:

137.    The Individual Defendants engaged in extreme and outrageous conduct by arresting Plaintiff, in front of a crowd of bystanders, despite knowing that he did not commit a crime, and by causing Plaintiff to be unlawfully detained for approximately 36 hours.

138.    Det. Simmonds further engaged in extreme and outrageous conduct by ripping Plaintiff off of his bike, pushing him against a wall and choking him.

139.    By engaging in this conduct, the Individual Defendants ignored a clear risk of harm to Plaintiff.

140.    The Defendants intended to cause Plaintiff severe emotional distress or disregarded the substantial likelihood that their conduct would cause Plaintiff such distress.

141.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein alleged, including but not limited to severe emotional distress.

142.     Defendant City, as employer of the Defendant Officers, is responsible for the Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

143.     Plaintiff is entitled to punitive damages against the individual defendants.

Dated:        New York, New York
              December 11, 2023.

                              ZMO LAW PLLC

                              BY: /s/ Zachary Margulis-Ohnuma
                              _____
                              Zachary Margulis-Ohnuma
                              Benjamin Notterman
                              353 Lexington Ave., Suite 900
                              New York, NY 10016
                              (212) 685-0999

                              *Attorneys for Plaintiff Dewayne Griffin*